First case, Tlaibi. Good morning, Your Honor. I'm Saeed Amini, as I stated. Good morning. This is a dismissal case of a civil action that was filed by Iranian national. The really main issue is the statute of limitation, whether or not it should have been told in this specific case. We do not have any triggering date of initiating the statute of limitation. And also, we believe it should have been told in this case because of the circumstances. Under New York law, as I understand it, a cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. Isn't that the law? Well, we don't believe a breach even has occurred because they never really attempted to go to OFAC and get the required license. You say it's in a joint appendix on 19 that defendants materially breached the sales agreement on July 5th, 2011. It did, but they could have . . . That's in the complaint. In the complaint, yes. Yes, I understand that. That was breached at the time, but they could have taken an action and filed for OFAC license and permitted them to have an export here. I mean, a breach can occur, but then you can rectify that subsequently. And in this case, at that time I mentioned it was breached, but still they were negotiating to get this one kind of repaired, the damage repaired in this case. And they were negotiating until 2013. And even when I filed for OFAC license in 2016, there was really . . . if I knew it was a statute of limitation has expired, I would not have applied because I knew if I got the license, still we can ship this item. Yes, I did say that in the complaint, but just looking back at the back, sometimes there's a breach occurs, but again, people can rectify that. And in this case, they did not say we are not actually going to ship this one back. There was no answer to any of the complaints saying we cannot do it, to really have a hard breach. There was really no answer in any of the complaint at any time. And as of today, they can't even continue getting the license and ship this item. You make, as I understand it, in the complaint what seemed to me to be rather bare allegations that the defendants orchestrated or were instrumental in Mr. Tlaiby's conviction and imprisonment. Could you say more? Sure, Your Honor. He came from Iran and he was picked up in the airport. And at that point, the defendant, Paley, they received $390,000. And just how would the federal agent knew why he is coming? He had the visa. He was in the airport and he was picked up at the airport. And in this case, the primary person who really violated the sanction law was this defendant in this case. And they had not even been involved. They had not been charged and nothing had happened to them. And Tlaiby was picked up at the airport. If he was picked up a couple of days after that, that may be something else. I mean, Your Honor, this is really logical, to me at least. You know, the defendant received $390,000 and makes his life complicated to even bring a lawsuit. It took me eight months to get the OFAC license just to bring the lawsuit. I filed it on May 17, 2016 and the license came October 3. It took that much time just to get a license because of his conviction. There's no other logical explanation why somebody would be picked up at the airport without any prior criminal wrongdoing. And he was charged and convicted of a single countable IEPA violation for specific items he purchased from the defendants. Your Honor, I believe I preserved two minutes, three minutes. I can answer any other question because you have three minutes. You'll have three minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Miriam Manber with the law firm Hoagy, Newman, Riegel & Kenney. And I'm here on behalf of the defendants at Police Gas Turbine Controls Corporation and Peter Zinman. I was also counsel in the trial court below. I think Your Honors can see this is a pretty straightforward case. The amended complaint is very clear that the statute of limitations had run before the appellants filed their complaint in federal court. They admit this. They admitted it in the court below. And they admit that they were aware of the cause of action at all points during the limitations period. Furthermore, the appellants had more than one chance to plead their case. They were given an opportunity to amend their complaint and did so. But the amended complaint failed to address or cure any of the flaws of their first argument, even with the benefit of having seen our first motion to dismiss. What happened to the $390,000 that they paid? Well, Your Honor, it's not in the record because this is a very limited record on the motion to dismiss. But I'm happy to tell you. I didn't see that the money was ever returned. There's no mention of it if the contract doesn't go forward. I was just wondering what happened to the money? Well, Your Honor, on advice of counsel, my client was not able to return the money because he couldn't send money to Iran under the sanctions regime. So to the extent Your client still has the money? No, actually. Most of the money is gone partially because my client is a reseller. So when an order comes in, they have to go purchase the parts for that order. So a good chunk of the money went to purchase the parts for the order. And another good chunk of the money went towards legal fees when it became clear that the transaction was in violation of U.S. law. Do we know anything about the parts? Just curious. The parts that were purchased, were they then resold to somebody else such that the $390,000 is still with him? So they were not able to cover in that way, Your Honor, for a couple of reasons. First, because the parts were subject to quarantine by the Department of Commerce. So they actually just kind of had to hold on to the parts in a segregated section of their warehouse. And they could not then resell them for what the value would have been for a couple of reasons. One, because by the time the quarantine had expired, the warranty that these parts came with had also expired, which detracts from their value significantly. And second of all, because in the time that the parts were sitting there in the warehouse, the demand for those particular parts had gone way down because technology moves on as time moves on. So like I said, none of this is in the record on the motion to dismiss, but I think it's important to know that my client does not have a sort of windfall happening. This was a huge headache and a huge issue for the appellees. And then I guess finally, to the extent that the appellants lean heavily on the notion of equity or fairness, I think a notion of equity would better support the risk of loss falling on the party that admittedly intentionally attempted to consummate a transaction in violation of U.S. law. If you look in the complaint, it actually says that he tried to do this transaction several times, and each time he was told, no, you can't do this because of the export regulations and the Iran sanctions. And he continued to pursue it, intentionally concealing from us that the parts were destined for Iran. So in terms of where the risk of loss should fall in terms of public policy or any notion of equity, I think it makes sense that it should be a part of the U.S. law. Unless Your Honors have any further questions, we'll rest on our brief. Thank you. Thank you. Thank you, Your Honor. Just a couple of points, Your Honor. First of all, he had the items when my client approached him. He did not say he's going to get from someplace else. He has a resale. These are the items for the machine manufactured by GE in 1980s. So it's not going to—this is for that kind of machine. It's not for the new system. So they had this— Do you know whether he had to secure parts from other places, or you're just assuming that the parts were already there? Well, again, they are not in the record because this was dismissed prematurely. I have email between my client and, in this case, Mr. Zinnman, that he has a part. He said, at the first email, he says, I do have the part. And the part, they have a serial number, Your Honor. This part, actually, for the machine was sold to Iran before the sanction, back in the early 1990s. So he knew exactly what this part was for because there's a—actually, there's a signature on them by the serial number. He tried to get this item in France. They didn't sell it to him because by matching the serial number, they knew this item was for Iran. So saying these items are no longer for any use, they did not even give me an opportunity to file for OFAC license to actually get this one imported to Iran or exported to Iran, just because it was dismissed by the lower court so prematurely, in this case, Your Honor. The real—I mean, your real challenge is that your complaint alleges that the defendant material breached the agreement that forms the basis of plaintiff's claims on or about July 5, 2011. I understand that. That's my statement, and I'm going to live with the statement I made. But Your Honor, again, sometimes there's a breach between builder and somebody is building a house. There's a breach, but then they can rectify that. And in this case, there was a breach, but they tried to work it out. And that's why he came here in 2012, tried to get this one straightened out. If he knew it was completely breached, he would not have come and I would not have filed for OFAC license. So the breach, yes, but it can also rectify, and then subsequently you have a contract for it, in this case, continuing negotiation. And the defendant, again, never, ever said, I cannot deliver this one to you as of today. Never made any single attempt to deliver it by going to OFAC and getting a specific license. That is the point I'm making. Yes, there was a breach, but that—there's a continued negotiation after that, which I believe rectified the deal. And as defendant never said, we cannot do this. Thank you. Thank you both for your arguments. Thank you, Your Honor. Thank you for your time. The Court will reserve decision.